# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| STEPHEN MATTHEW HOPKINS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | NO. 1:19-cv-00059 |
| ) | |
| ANTHONY "TONY" NICHOLS, et al., ) | JUDGE CAMPBELL |
| ) | MAGISTRATE JUDGE HOLMES |
| Defendants. ) | |

## MEMORANDUM

Pending before the Court is Defendants' Motion for Summary Judgment. (Doc. No. 38). Plaintiffs filed a Response in Opposition (Doc. No. 45), Defendants filed a Reply (Doc. No. 50), Plaintiffs filed a Sur-Reply (Doc. No. 56), and Defendants filed a Response to Plaintiffs' Sur-Reply (Doc. No. 60). For the reasons discussed below, Defendants' Motion for Summary Judgment will be **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In 2018, Plaintiffs Matthew Hopkins and Julie Hopkins ("Mr. and/or Mrs. Hopkins") resided at 3417 Mealer Road in Chapel Hill, Tennessee ("the Hopkins' Residence") and owned a farm property located at 3706 Mealer Road in Chapel Hill, Tennessee ("the Hopkins' Farm") where they maintained over 40 cattle. (Doc. No. 47 ¶¶ 1-4, 7). At all times relevant to the present action, Defendant William "Billy" Lamb ("Sheriff Lamb") was the Sheriff of Marshall County, Tennessee, and Defendant Anthony Nichols ("Detective Nichols") was a detective with the Marshall County Sheriff's Department. (Doc. No. 28 ¶¶ 5, 4).

At some point before July 2, 2018, Detective Nichols was notified of a complaint that a dead cow was in a creek and that another cow was down in the pasture on the Hopkins' Farm.

(Doc. No. 47 ¶ 4). Detective Nichols drove by the Hopkins' Farm and saw the dead cow in the creek and other cattle that did not appear in good health. (*Id*. ¶ 5).

On July 2, 2018, Detective Nichols appeared at the back door of the Hopkins' Residence with Tennessee Department of Agriculture Veterinarian Jill Johnson ("Dr. Johnson"), wearing his badge and gun, and demanded that Mrs. Hopkins escort them to the cattle on the Hopkins' Farm. (*Id*. ¶ 7). Mrs. Hopkins asked Detective Nichols if he could wait to see the cattle until her husband came home or until after she fed her children lunch to which Detective Nichols responded, "No, absolutely not. I need to see them right now." (Nichols Deposition Transcript, Doc. No. 48-13 at PageID # 738; J. Hopkins Deposition Transcript, Doc. No. 48-7 at PageID #590; J. Hopkins Declaration, Doc. No. 48-15 ¶ 4). Mrs. Hopkins called Mr. Hopkins to inform him of the situation and then escorted Detective Nichols and Dr. Johnson to their Farm. (Doc. No. 47 ¶¶ 8-10). Dr. Johnson examined the Hopkins' cattle and completed a Livestock Welfare Examination Form dated July 2, 2018. (*Id*. ¶ 18). Dr. Johnson determined that probable cause for animal cruelty was present, as her examination had revealed that the cattle appeared to be subject to unreasonable failure to provide necessary food, water, care, or shelter. (*Id*. ¶ 24).

Detective Nichols entered the Hopkins' Farm again on July 9, 2018, and July 12, 2018. (*Id*. ¶¶ 28, 34-36). While on the Hopkins' Farm on July 12, 2018, Detective Nichols and Dr. Johnson discovered two skeletal remains in a wooded portion of the pasture, as well as a sinkhole with the remains of multiple cattle. (*Id*. ¶ 37). Dr. Johnson examined the Hopkins' cattle and completed a Livestock Welfare Examination Form dated July 12, 2018. (*Id*. ¶ 39). Dr. Johnson again determined that probable cause for animal cruelty was present, as her examination had revealed that the cattle appeared to be subject to unreasonable failure to provide necessary food, water, care, or shelter. (*Id*. ¶ 40). On July 13, 2018, Detective Nichols, Sheriff Lamb, and seven other

individuals entered the Hopkins' Farm without a warrant and seized 49 of the Hopkins' cattle as evidence of a crime. (*Id*. ¶ 45).

On July 19, 2018, Detective Nichols swore out forty-nine (49) arrest warrants stating that Mr. Hopkins had violated Tenn. Code Ann. § 39-14-202 Cruelty to Animals. (*Id*. ¶ 46). While the criminal proceedings were pending against Mr. Hopkins, the cattle were sold on December 17, 2018, due to the costs of upkeep and the criminal cases were dismissed on the condition that Mr. Hopkins pay for the care of the cattle from the proceeds of the sale. (*Id*. ¶ 60).

On July 14, 2019, Mr. and Mrs. Hopkins filed this lawsuit under 42 U.S.C. § 1983 alleging violations of their rights under the Fourth, Fifth, and Fourteenth Amendments. (Doc. No. 1). The Hopkins filed suit against Sheriff Lamb and Detective Nichols in both their individual and official capacities. (Doc. No. 28 ¶¶ 5-6). In Count I, the Hopkins assert that Defendants violated their rights to notice and an opportunity to be heard pursuant to the Fifth and Fourteenth Amendments. (*Id*. ¶¶ 66-83). In Count II, the Hopkins assert that Defendants violated their rights to be free from unlawful searches and seizures pursuant to the Fourth Amendment. (*Id*. ¶¶ 84-101). In Count III, the Hopkins assert that Defendants violated their rights to be free from government takings without compensation pursuant to the Fifth Amendment's Taking Clause. (*Id*. ¶¶ 102-106).

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element

of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III.  ANALYSIS

Section 1983 provides that "an individual may bring a private cause of action against anyone who, acting under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted). Detective Nichols and Sheriff Lamb move for summary judgment on the basis that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Courts employ the following two-part test to determine whether a government official is entitled to qualified immunity: (1) whether the alleged facts, viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right, and (2) whether that constitutional right was clearly established. *See Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678, 695 (6th Cir. 2020) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If either prong is not met, then the government officer is entitled to qualified immunity." *Doe v. Miami Univ.*, 882 F.3d 579, 604 (6th Cir. 2018). "[T]he plaintiff bears the burden of showing that an officer is not entitled to the defense of qualified immunity." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 898 (6th Cir. 2019). Applying these standards, the Court will now address each of the alleged constitutional violations in turn.

**A. Fourteenth Amendment**

Mr. and Mrs. Hopkins claim that Detective Nichols and Sheriff Lamb violated their constitutional rights to notice and an opportunity to be heard, pursuant under the Fourteenth Amendment, when they seized their cattle without following the procedures set out in Tennessee Code Annotated Section 39-11-707. (*See* Doc. No. 28 ¶¶ 66-83). To establish this claim, Mr. and Mrs. Hopkins must show that "(1) [they] had a life, liberty, or property interest protected by the Due Process Clause; (2) [they were] deprived of this protected interest; and (3) the state did not afford [them] adequate procedural rights prior to depriving [them] of the property interest." *O'Neill v. Louisville/Jefferson Cty. Metro. Gov't*, 662 F.3d 723, 732 (6th Cir. 2011) (citation omitted).

Detective Nichols and Sheriff Lamb assert that the Hopkins cannot establish that they had a property interest protected by the Due Process Clause because their cattle were seized as part of criminal proceedings. (Doc. No. 39 at 16 ("because the [cattle] were seized as part of criminal proceedings, that property interest was protected by the Fourth (not the Fourteenth) Amendment.")

(quoting *King v. Montgomery Cty., Tenn.*, 797 F. App'x 949, 956 (6th Cir. 2020)). Defendants are correct, as the Sixth Circuit has explained "it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area," not the Fourteenth Amendment. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005) ("the Due Process Clause of the Fourteenth Amendment does not require any additional procedures beyond those mandated by the Fourth Amendment."); *id*. ("[t]he Fourth Amendment['s] … balance between individual and public interests always has been thought to define the 'process that is due' for seizures of persons or property in criminal cases.") (quoting *Gerstein v. Pugh*, 420 U.S. 103, 125 n. 27 (1975)). Accordingly, Mr. and Mrs. Hopkins have failed to establish a violation of their rights to procedural due process under the Fourteenth Amendment concerning the seizure of their cattle.

**B. Fifth Amendment**

Mr. and Mrs. Hopkins claim that Detective Nichols and Sheriff Lamb violated their constitutional rights to be free from government takings without compensation pursuant to the Fifth Amendment's Taking Clause when they seized their cattle. (*See* Doc. No. 28 ¶¶ 102-106). Detective Nichols and Sheriff Lamb argue that the Hopkins are unable to establish a violation of the Fifth Amendment's Takings Clause because their cattle were taken as evidence in the criminal investigation and proceedings against Mr. Hopkins for animal cruelty. (Doc. No. 39 at 26 (citing *Spann v. Carter*, 648 F. App'x 586, 589 (6th Cir. 2016) ("the Takings Clause does not prohibit the uncompensated seizure of evidence in a criminal investigation.")). Defendants are correct that "a state's seizing and retaining property as part of a criminal investigation is not a 'taking' for a 'public purpose' under the Fifth Amendment, and thus does not give rise to a claim for just compensation." *Ostipow v. Federspiel*, 824 F. App'x 336, 341 (6th Cir. 2020) (citing *Bennis v. Michigan*, 516 U.S.

6

442, 452–53 (1996)). Accordingly, Mr. and Mrs. Hopkins have failed to establish a violation of their rights under the Fifth Amendment's Takings Clause concerning the seizure of their cattle.

**C. Fourth Amendment**

The Hopkins claim that their rights to be free from unlawful searches and seizures pursuant to the Fourth Amendment were violated when Detective Nichols searched their farm multiple times without a warrant, seized Mrs. Hopkins on July 2, 2018, and seized their cattle without a warrant on July 13, 2018. (*See* Doc. No. 28 ¶¶ 84-101). To establish these claims, the Hopkins must show that the claimed searches and seizures occurred and that they were unreasonable. *See Brower v. County of Inyo*, 489 U.S. 593, 599 (1989).

1. <u>Searches of the Hopkins' Farm</u>

As noted above, the Hopkins claim that Detective Nichols searched their farm multiple times without a warrant in violation of their rights under the Fourth Amendment to be free from unreasonable searches. Defendants assert that Detective Nichols' searches of the Hopkins' Farm were lawful under the Fourth Amendment pursuant to the open fields doctrine. (Doc. No. 39 at 20; Doc. No. 50 at 5-6, 9 ("The Supreme Court has consistently held 'that police officers are permitted to enter and search an open field absent a warrant.'") (quoting *Holloran v. Duncan*, 92 F. Supp. 3d 774, 787 (W.D. Tenn. 2015) (quoting *Oliver v. United States*, 466 U.S. 170 (1984)).

Defendants are correct that the Supreme Court has held that "an open field, unlike the curtilage of a home, *see United States v. Dunn*, 480 U.S. 294, 300, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), is not one of those protected areas enumerated in the Fourth Amendment." *United States v. Jones*, 565 U.S. 400, 411 (2012) (citing *Oliver*, 466 U.S. at 176–177 and *Hester v. United States*, 265 U.S. 57, 59 (1924)); *see also id.* ("The Government's physical intrusion on such an area…is of no Fourth Amendment significance."). The term "open fields" includes "any unoccupied or

undeveloped area outside of the curtilage," even if the area is neither "open" nor a "field" as those terms are used in common parlance. *Golf Vill. N. LLC v. City of Powell, Ohio*, 333 F. Supp. 3d 769, 776 (S.D. Ohio 2018) (quoting *Oliver*, 466 U.S. at 180 n. 11). Here, the Hopkins do not contend that their Farm was within the curtilage, the physical area "immediately surrounding and associated with the home." *Fla. v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Oliver*, 466 U.S. at 180). Even viewing the facts in the light most favorable to the Hopkins, the record indicates that their Farm is an "open field," and therefore not entitled to Fourth Amendment protection. *See Oliver*, 466 U.S. at 176-77, 181 (holding that "an individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers."). Accordingly, Detective Nichols' warrantless searches of the Hopkins' Farm did not violate Mr. and Mrs. Hopkins' rights to be free from unreasonable searches.

2. Seizure of Mrs. Hopkins

The Hopkins claim that Mrs. Hopkins was unlawfully seized on July 2, 2018, when Detective Nichols appeared at the back door of their Residence with Dr. Johnson, wearing his badge and gun, and demanded that she escort them to the cattle of the Hopkins' Farm. (*See* Doc. No. 45). Defendants appear to challenge whether a seizure occurred, asserting that there was no show of authority that restrained Mrs. Hopkins' freedom of movement. (*See* Doc. No. 50 at 4-5).

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

8

*Torres v. Madrid*, 141 S. Ct. 989, 998-99 (2021). "[T]he appropriate inquiry into whether there has been a Fourth Amendment seizure of a person is whether the challenged conduct *objectively* manifests an intent to restrain." *Id*. Accordingly, the appropriate inquiry here is whether Detective Nichols' challenged conduct of identifying himself as an officer while wearing a badge and gun and demanding to be taken to the Hopkins' cattle "right now" objectively manifested an intent to restrain such that a reasonable person would have believed that they were not free to leave. Viewing the evidence in the light most favorable to Mrs. Hopkins, as the Court is required to do for the non-moving party on summary judgment, the Court finds that a reasonable jury could find that a reasonable person would have believed that she was not free to leave without complying with Detective Nichols' request.

Defendants also assert that there was no unlawful seizure because Mrs. Hopkins consented to escort Detective Nichols and Dr. Johnson to the Hopkins' Farm. (Doc. No. 50 at 5; *see id*. at 9 ("Mrs. Hopkins consented to escort Detective Nichols and Dr. Johnson to [the Hopkins' Farm], and no showing of force or authority coerced her into such.")). "Consent must be proved by clear and positive testimony and must be unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion." *United States v. Haynes*, 301 F.3d 669, 682 (6th Cir. 2002). "When deciding whether a party's consent was freely given or coercively extracted, a court should consider the totality of the circumstances, including, for example, the party's age and education and the nature of the questioning from which the consent originated." *United States v. Sheckles*, 996 F.3d 330, 346 (6th Cir. 2021) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). The party asserting consent must demonstrate that the consent was voluntary under the circumstances. *Schneckloth*, 412 U.S. at 227.

9

Here, Detective Nichols asserts that the consent was voluntary because Mrs. Hopkins did not inquire as to whether she had a choice in the matter, did not voice a refusal, and did not ask about a warrant. (*See* Doc. No. 50 at 5). Mrs. Hopkins denies providing voluntary consent, maintaining that she "merely submitted to Nichols' claim of lawful authority" and did not feel like she had any choice but compliance. (Doc. No. 45 at 16-17 (citing J. Hopkins Declaration, Doc. No. 48-15 ¶ 6)). Viewing the facts in the light most favorable to Mrs. Hopkins, the Court finds there is a genuine dispute of material fact as to whether Mrs. Hopkins provided valid consent to escort Detective Nichols and Dr. Johnson to the Hopkins' Farm on July 2, 2018.

3. <u>Seizure of the Hopkins' cattle</u>

The Hopkins claim that Detective Nichols and Sheriff Lamb seized their cattle in violation of their rights under the Fourth Amendment to be free from unreasonable seizures. "What is 'unreasonable' varies from case to case, from type of seizure to type of seizure." *Graves v. Mahoning Cty.*, 821 F.3d 772, 775 (6th Cir. 2016). "A seizure of personal property is '*per se* unreasonable ... unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized.'" *United States v. Williams*, 998 F.3d 716, 738 (6th Cir. 2021) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)). A seizure "carried out on a suspect's premises without a warrant is *per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances,' or another of the carefully delineated exceptions to the warrant requirement." *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 489 (6th Cir. 2014) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971)) (internal quotations and citations omitted); *see, e.g.*, *United States v. Vaughn*, 429 F. Supp. 3d 499, 521 (E.D. Tenn. 2019) ("warrantless seizures fail constitutional muster unless they qualify under one of several well-

defined exceptions") (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). Accordingly, to determine whether the seizure of the Hopkins' cattle was unreasonable, and thus a violation of the Hopkins' rights under the Fourth Amendment, the Court considers whether an exception to the Fourth Amendment's warrant requirement applies.

Plain view is the only warrant exception argument presented.[1] The plain view doctrine allows an immediate warrantless seizure "'if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object.'" *United Pet Supply,* 768 F.3d at 489 (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). The Sixth Circuit has explained that "the lawful-right-of-access requirement obliges a government official to 'get a warrant if possible before he seizes an item in plain view. He cannot seize absent exigent circumstances. If he could obtain a warrant, then ... he cannot use the 'plain view' exception for the evidence.'" *Id*. at 489–90 (quoting *United States v. McLevain*, 310 F.3d 434, 443 (6th Cir. 2002) (citing *Horton v. California*, 496 U.S. 128, 137 n.7 (1990)); *see, e.g., Boone v. Spurgess*, 385 F.3d 923, 928 (6th Cir. 2004) (lawful-right-of-access requirement "is meant to guard against warrantless entry onto premises whenever contraband is viewed from off the premises in the absence of exigent circumstances."). Here, the plain view exception to the warrant requirement cannot be used because Detective Nichols could have obtained a warrant before seizing the Hopkins' cattle. (*See, e.g.,* Doc. No. 47 ¶ 48).

The Court next considers whether a reasonable official would have known that the warrantless seizure of the Hopkins' cattle violated a clearly established federal right. *See Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678, 696 (6th Cir. 2020) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The right to be free from unreasonable searches and seizures is clearly

---

[1] Defendants do not argue that exigent circumstances required warrantless seizure, and the record would not support such a conclusion. Nor do Defendants argue that any other warrant exception applies.

established." *Greer v. City of Highland Park, Michigan*, 884 F.3d 310, 316 (6th Cir. 2018) (citing *Graham v. Connor*, 490 U.S. 386, 392–93 (1989)). More specifically, however, the Court must ask whether reasonable officials – armed with the information that was available to Detective Nichols – would know that seizing the Hopkins' cattle without a warrant violated the Hopkins' rights to be free from unreasonable seizures. *See Moderwell v. Cuyahoga Cty.*, 997 F.3d 653, 660 (6th Cir. 2021) ("A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, (2011)).

At the time of the challenged conduct in the present case, July 2018, the contours of the right to be free from unreasonable seizures were sufficiently clear – warrantless seizure of private property while on private property violates that right, unless a specific exception to the warrant requirement applies. *See United Pet Supply*, 768 F.3d at 489. Defendants assert that a reasonable official would not have known that seizing the Hopkins' cattle without a warrant violated a clearly established federal right because Detective Nichols and Sheriff Lamb were enforcing Tennessee Code Annotated Section 39-14-211, which they believed authorized seizures of livestock without a warrant. (Doc. No. 39 at 23-25). However, because the question of whether the constitutional right to be free from unreasonable seizures was clearly established at the time of the challenged seizure is an objective inquiry, "[Sheriff Lamb and Detective Nichols'] subjective beliefs about the [seizure] are irrelevant." *Anderson*, 483 U.S. at 641. Moreover, in July 2018 it was also sufficiently clear that the contours of the Fourth Amendment right to be free from unreasonable seizures are not dependent on local law enforcement practices or the law of the particular State in which the seizure occurs. *See Virginia v. Moore*, 553 U.S. 164, 172 (2008) ("We thought it obvious

that the Fourth Amendment's meaning did not change with local law enforcement practices … While those practices 'vary from place to place and from time to time,' Fourth Amendment protections are not 'so variable' and cannot 'be made to turn upon such trivialities.'") (citing *Whren v. United States*, 517 U.S. 806 (1996)); *see also id*. ("[W]hether or not a search is reasonable within the meaning of the Fourth Amendment," we said, has never "depend[ed] on the law of the particular State in which the search occurs.") (quoting *California v. Greenwood*, 486 U.S. 35, 43 (1988)). Accordingly, Detective Nichols and Sheriff Lamb are not entitled to qualified immunity insofar as it concerns the seizure of the Hopkins' cattle.[2]

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be denied. An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[2] Because Detective Nichols and Sheriff Lamb seek dismissal of the Hopkins' claims against them in their official capacities solely on the grounds that they did not violate any of the Hopkins' constitutional rights and are entitled to qualified immunity, (*see* Doc. No. 39 at 28; Doc. No. 50 at 9-10), the Hopkins' claims against Detective Nichols and Sheriff Lamb in their official capacity will not be dismissed.