IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT COLUMBIA

| | | |
|---|---|---|
| STEPHEN MATTHEW HOPKINS AND JULIE R. HOPKINS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:19-cv-00059 |
| ANTHONY "TONY" NICHOLS, *in his individual and official capacity*, and WILLIAM "BILLY" LAMB, *in his individual and official capacity* | ) ) ) ) ) | District Judge Campbell/ Magistrate Judge Holmes |
| Defendants. | ) ) ) | JURY DEMAND |

## MOTION TO ALTER OR AMEND THE JUDGMENT AND/OR FOR REMITTITUR ON BEHALF OF DEFENDANTS

Defendants, Anthony "Tony Nichols and William "Billy" Lamb, in their individual and official capacities, move pursuant to Rule 59 and/or Rule 60 for this Court to alter or amend the judgment in this case. Rule 59(e) permits a court to alter or amend a judgment based on the following: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.,* 616 F.3d 612, 615 (6th Cir. 2010). In the Sixth Circuit, "[t]he grant or denial of a Rule 59(e) motion is within the informed discretion of the district court, reversible only for abuse." *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 467 (6th Cir. 2009) (quoting *Scotts Co. v. Central Garden & Pet Co.*, 403 F.3d 781, 788 (6th Cir. 2005)). Rule 60(b) permits relief from a final judgment for "mistake, inadvertence, surprise, or excusable neglect" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (6).

## I. The Evidence Failed to Support a Finding of Liability as to Sheriff Lamb

Plaintiff's alleged that Sheriff Lamb was liable under a theory of supervisory liability. However, to hold a supervisor liable for an unconstitutional act of a subordinate, a plaintiff must plausibly allege that the supervisory defendant "authorized, approved, or knowingly acquiesced in the unconstitutional conduct…of his subordinates through the execution of his job function." *Crawford v. Tilley,* 15 F.4th 752, 761 (6th Cir. 2021)(quoting *Peatross v. City of Memphis,* 818 F.3d 233, 241 (6th Cir. 2016)). In *Crawford*, the Sixth Circuit emphasized that supervisory liability requires both active involvement by the supervisor and causation. *Crawford* at 761-762. Supervisory liability will not attach for "a mere failure to act." *Id.* at 761. The challenged conduct must be both the cause in fact and a proximate cause of the alleged injury. *Id.* at 762. "In other words, the defendant's execution of his job functions must have caused the plaintiff's injury." *Id. (citing Peatross*, 818 F.3d at 242). In *Crawford*, the Sixth Circuit further described cases where the exacting causation standard applied and described what they had in common:

> Supervisory liability is generally limited to times when the supervisor had existing knowledge of the specific type of conduct that led to a plaintiff's injuries. *See Garza,* 972 F.3d at 859-65 (teacher's physical abuse); *Peatross*, 818 F.3d at 237-39 (police department shootings); *Campbell*, 700 F.3d at 782-784, 790 (K-9 unit's dog bites).

*Crawford* at 767.

In this case, Plaintiffs ended up claiming that Sheriff Lamb had supervisory liability based on his direct participation in the seizure on July 13, 2018. The evidence presented at trial fell short of presenting a case for supervisory liability. Plaintiffs relied on their security cameras to establish the length of time that Sheriff Lamb was at the scene of the

farm property on the day of the seizure. However, there was no testimony or evidence that Sheriff Lamb had any participation prior to that date or that he knew that the cattle were being seized without a warrant or consent. Without more, the denial of the directed verdict and the submission of this issue to the jury constituted a mistake/clear error of law. The finding of liability as to Sheriff Lamb by the jury was not supported by the evidence. Accordingly, this Court should set aside the verdict as to Sheriff Lamb and remit the damage award to prevent a manifest injustice.

## II. The Evidence Failed to Support a Finding of Liability as to Marshall County

The Supreme Court established in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), that municipalities may be subject to liability under 42 U.S.C. § 1983, but only for deprivation of federally protected rights carried out in accordance with an official policy or custom. *Id.* at 694; *Novak v. City of Parma, Ohio*, 33 F.4th 296, 309 (6th Cir. 2022), *cert. denied sub nom. Novak v. City of Parma*, 143 S. Ct. 773, 215 L. Ed. 2d 45, (2023). An unwritten or informal practice can be a basis for liability under § 1983 and *Monell*, provided that it amounts to "a pervasive custom or practice" of which the defendant's policymakers "know or should know," or is otherwise "attributable to" the defendant. *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014). Plaintiffs alleged that Marshall County Sheriff's Office had a custom or policy of seizing animals on suspicion of animal cruelty without a warrant. However, as was raised during the trial, Plaintiffs failed to present evidence to establish this claim. No evidence of a formal policy of which Sheriff Lamb was aware was ever introduced during the trial. Additionally, the evidence at trial was insufficient to establish the claim for a County custom and should not have been submitted to the jury for consideration.

Specifically, Plaintiffs' counsel inquired of Sheriff Lamb in their case in chief whether there had been other instances when Detective Nichols had seized animals without a warrant in the last ten years. (Transcript (rough draft), Volume 4, pp. 188:8-12). Sheriff Lamb answered this question in the affirmative. However, no further inquiry was made, and no evidence was introduced as to how many other instances of warrantless seizures had occurred. (See generally, Transcript of Sheriff Lamb's Testimony (rough draft)). No inquiry was ever made as to whether or not the other seizures had occurred with the consent of the owners. *Id.* Finally, Plaintiffs' counsel did not ask or introduce any evidence to support that Sheriff Lamb knew of the alleged custom. *Id.* The only detailed proof at trial was with regard to the one occurrence that was the subject of the lawsuit. *Id.* This is insufficient to establish a claim of a custom.

"[T]o infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*." *City of Canton v. Harris*, 489 U.S. 378, 398 (1989) (relying on *Oklahoma City* v. *Tuttle*, 471 U.S. 808, 831 (1985). Therefore, to trigger *Monell* liability under a custom theory, a plaintiff must show that the municipal defendant was deliberately indifferent to a clear and persistent pattern of unconstitutional conduct. *See Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 503 (W.D. Ky. 2021). The Sixth Circuit has routinely required a plaintiff to prove that a municipality and its policymaking officials knew of the alleged unconstitutional practice and acquiesced in it. *See Miller v. Calhoun County*, 408 F.3d 803, 814 (6th Cir. 2005); *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902, 86 Fed. Appx. 137 (6th Cir. 2004). Evidence of such knowledge was lacking at trial.

Further, the alleged pattern must be "so permanent and well settled as to constitute a custom or usage within the force of the law." *Beard v. Whitmore Lake Sch. Dist.*, 244 F. App'x 607, 613 n.3 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 691)(finding two unconstitutional searches throughout five months insufficient to attach *Monell* liability under a custom theory). The mere fact that a search occurs without a warrant does not render the search unreasonable or in violation of the Fourth Amendment. *See United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013). The same holds true for warrantless seizures. Therefore, the evidence of prior warrantless searches without more does not reveal whether such searches were unconstitutional. Without proof of more than one *unlawful* occurrence, the record is simply devoid of any similar acts from which the jury could have found a custom to exist in Marshall County. The Court itself, after hearing from counsel for the defense on day five of the trial, asked Plaintiffs' counsel about the proof and Mr. Mothershead admitted that the number of warrantless seizures was not in the record. (Transcript (rough draft), Volume 5, pp. 154:4-156:13). This Court expressed concern about the issue of whether a custom could be established but chose to allow the issue to go to the jury, but subject to review. *Id.* at pp. 160:18-161:8. Based on the lack of proof, the evidence simply did not and could not support liability as to the County and no reasonable jury should have found otherwise. As such, the jury's verdict on this issue should also be set aside by this Court and the damage award remitted to reflect the dismissal of the County.

### III. The Evidence Failed to Support a Finding of Punitive Damages Against Sheriff Lamb and/or Tony Nichols

"Punitive damages are appropriate in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous

indifference to the federally protected rights of others.'" *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015) (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)). As articulated above, there was no clear and convincing evidence introduced that established a claim against Sheriff Lamb, much less any evidence to support punitive damages in this matter. Therefore, no reasonable jury could have found that punitive damages against Sheriff Lamb were appropriate.

Additionally, the award of punitive damages against Det. Nichols was likewise lacking in evidence. No evidence was introduced during the bifurcated punitive damage phase. The award, however, was excessive due to the nature of Nichol's conduct in this case. To determine "[w]hether a punitive damages award is so excessive as to offend due process," the court considers three guideposts: "the degree of reprehensibility of the defendant's conduct, the punitive award's ratio to the compensatory award, and sanctions for comparable misconduct." *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 643 (6th Cir. 2005) (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 576-84, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996)). Admittedly, the punitive damage award being lower than the current overall award of compensatory damages does not lend itself to an argument supporting a lack of due process. However, of the three factors, the reprehensibility of a defendant's conduct best indicates the reasonableness of a punitive damages award. *Romanski*, 428 F.3d at 643. In determining the degree of reprehensibility, the courts consider whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003). The absence of all of these factors renders an award suspect. *See Romanski*, 428 F.3d at 643.

The harm in this case was the seizure of cattle. It did not involve physical harm to the plaintiffs. It did not involve the indifference to or reckless disregard of the health or safety of others. There is no evidence that the plaintiffs were financially vulnerable. In fact, the evidence indicated just the opposite. There was no evidence to support that the conduct at issue was actually repeated actions. As discussed above, the only evidence regarding other warrantless seizures did not provide any details or context to the other seizures. There was not only no indication of the number, but for purposes of this consideration, there was no indication that the other warrantless seizures were without consent or exigent circumstances. Therefore, the record was again devoid of evidence of like situations having occurred, leaving the seizure at issue as the sole isolated incident. Finally, there is no evidence of intentional malice, trickery, or deceit on the part of Det. Nichols. As such, the degree of reprehensibility provides an indication that the award of punitive damages is excessive as to Det. Nichols and the defendants respectfully request that is Court exercise its discretionary power to remit the award of $100,000 against Det. Nichols and $25,000 against Sheriff Lamb.

Respectfully submitted,

*/s/ Robyn Beale Williams*
Robyn Beale Williams, BPR #19736
Laura Adams Hight, BPR #31942
**FARRAR | BATES | BEREXA**
12 Cadillac Drive, Suite 480
Brentwood, Tennessee 37207
Phone: 615-254-3060
Fax: 615-254-9835
rwilliams@fbb.law
lhight@fbb.law
*Counsel for Defendants Tony Nichols and Billy Lamb*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 2nd day of November, 2023, a true and correct copy of the foregoing has been forwarded via the Court's electronic filing system to:

| | |
|---|---|
| Frank R. Brazil, BPR #24586<br>Wesley Clark, BPR #32611<br>**BRAZIL CLARK, PLLC**<br>2901 Dobbs Ave<br>Nashville, TN 37211<br>Phone: 615-730-8619<br>Fax: 615-514-9674<br>wesley@brazilclark.com<br>frank@brazilclark.com<br>*Counsel for Plaintiffs* | Kyle Mothershead, BPR #22953<br>Relentless Advocacy, PLLC<br>2901 Dobbs Ave<br>Nashville, TN 37211<br>Phone: 615-429-4717<br>Fax: 615-229-6387<br>Email: kyle@relentlesslaw.com<br>*Counsel for Plaintiffs* |

*/s/ Robyn Beale Williams*
Robyn Beale Williams