IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| STEPHEN MATTHEW HOPKINS, et al., | ) |
| | ) |
|   Plaintiffs, | ) |
| | ) |
| v. | )   NO. 1:19-cv-00059 |
| | ) |
| ANTHONY "TONY" NICHOLS, et al., | )   JUDGE CAMPBELL |
| | )   MAGISTRATE JUDGE HOLMES |
|   Defendants. | ) |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' motion to alter or amend the judgment and/or for remittitur (Doc. No. 243) and Plaintiffs' response in opposition (Doc. No. 251). Although Defendants had the opportunity to file a reply in further support of their motion, they did not do so. For the reasons discussed below, Defendants' motion (Doc. No. 243) is **DENIED**.

### I.    BACKGROUND

On July 14, 2019, Plaintiffs Stephen Matthew Hopkins and Julie R. Hopkins ("Mr. and Mrs. Hopkins" or the "Hopkins") filed the present lawsuit under 42 U.S.C. § 1983 against Defendant William "Billy" Lamb ("Sheriff Lamb") and Defendant Anthony Nichols ("Detective Nichols") in their official capacities. (Doc. No. 1). The case was administratively closed from July 2021 until August 2022 due to Defendants' unsuccessful interlocutory appeal. (*See* Doc. Nos. 108, 115). The Court held a jury trial on the Hopkins' claims on September 26, 2023, through October 4, 2023.

At the conclusion of the trial, the jury returned a verdict in favor of the Hopkins on each of their claims brought under 42 U.S.C. § 1983 against each Defendant. (*See* Doc. No. 236). The jury found that Detective Nichols seized Mrs. Hopkins on July 2, 2018, Mrs. Hopkins should be

awarded compensatory damages in the amount of one dollar for the unlawful seizure of her person, and that Mrs. Hopkins should not be awarded punitive damages against Detective Nichols for the unlawful seizure of her person. (*See id*. at 1). As for the warrantless seizure of the Hopkins' cattle on July 13, 2018, the jury found:

- Mr. Hopkins did not consent to warrantless seizure of the cattle that day;
- Sheriff Lamb participated, officially authorized, approved, or knowingly went along with Detective Nichols' warrantless seizure of the Hopkins' cattle that day;
- the Marshall County Sheriff's Office had a custom or policy of seizing animals on suspicion of animal cruelty without a warrant;
- the warrantless seizure of the Hopkins' cattle occurred as a result of Sheriff Lamb's participation, official authorization, approval, or knowingly going along with Detective Nichols' warrantless seizure of the Hopkins' cattle that day and/or the custom or policy of the Marshall County Sheriff's Office of seizing animals on suspicion of animal cruelty without a warrant;
- Mr. and Mrs. Hopkins should be awarded compensatory damages in the amount of $350,000 for the unlawful seizure of their cattle; and that
- Mr. and Mrs. Hopkins should be awarded punitive damages against Detective Nichols and Sheriff Lamb for the unlawful seizure of their cattle.

(*See id*. at 2-3). For the unlawful seizure of the Hopkins' cattle, the jury awarded Mr. and Mrs. Hopkins $100,000 in punitive damages against Detective Nichols and $10,000 in punitive damages against Sheriff Lamb. (*Id*. at 4).

On November 2, 2023, Defendants filed the pending motion to alter or amend judgment and/or for remittitur. (Doc. No. 243). In support of their motion, Defendants filed rough drafts of

2

the trial transcripts. The Court subsequently directed the Clerk to remove the docket entries containing the rough drafts and ordered Defendants to file the final transcripts in place of the rough drafts. (Doc. No. 260). A few months later, the Court ordered Defendants to file a notice identifying the page numbers in the final transcripts that correspond with their pending motion's citations to the rough drafts. (Doc. No. 268). Additionally, the Court ordered Defendants to "file the Final Transcripts containing the arguments defense counsel raised prior to judgment that they now ask the Court to reconsider in their pending motion to alter or amend." (*Id*.).

On August 30, 2024, Defendants notified the Court that the final transcripts in support of their motion to alter or amend were filed at docket entry numbers 265 and 266. (Doc. No. 271; *see also* Doc. No. 272).

## II. STANDARD OF REVIEW

"Under Rule 59, a court may alter the judgment based on: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Gen. Motors, LLC v. FCA US, LLC*, 44 F.4th 548, 563 (6th Cir. 2022) (citation omitted). The decision to grant or deny such motions is within the discretion of the district court. *See Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 467 (6th Cir. 2009). "The purpose of Rule 59(e) is to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (citation and internal quotations omitted). Accordingly, "Rule 59(e) motions cannot be used to present new arguments that could have been raised prior to judgment." *Id*.

### III. ANALYSIS

Through their pending motion, Defendants ask the Court to set aside the jury's verdicts against Sheriff Lamb and Marshall County and to remit the jury's award of punitive damages. As grounds, Defendants first argue the Court committed a "clear error of law" in denying their motion for directed verdict and allowing the claim against Sheriff Lamb to proceed to the jury. (Doc. No. 243 at 2-3). Second, Defendants argue the Court should set aside the jury's verdict against Marshall County because the Hopkins failed to present evidence at trial that Sheriff Lamb knew of an informal custom of seizing animals on suspicion of animal cruelty without a warrant or consent. (*Id*. at 3-5). Finally, Defendants argue there was insufficient evidence to support the jury's punitive damages award against Sheriff Lamb and insufficient evidence to support the scale of the jury's punitive damages award against Detective Nichols. (*Id*. at 6-7).

As an initial matter, Defendants failed to comply with the Court's prior Order requiring them to "file the Final Transcripts containing the arguments defense counsel raised prior to judgment that they now ask the Court to reconsider in their pending motion to alter or amend." (Doc. No. 268). Rather, Defendants filed transcripts containing solely their argument against sending the issue to the jury as to whether Marshall County had a custom or policy of seizing animals on suspicion of animal cruelty without a warrant. (*See* Doc. No. 266). Thus, the only argument properly before the Court on the pending Rule 59(e) motion is Defendant's second argument – that the Court should set aside the jury's verdict against Marshall County because the Hopkins failed to present evidence at trial that Sheriff Lamb knew of an informal custom of seizing animals on suspicion of animal cruelty without a warrant or consent.

In the interest of resolving the pending motion on the merits, the Court will address all three of Defendants' arguments raised in their pending motion to alter or amend.

**A. Jury's verdict against Sheriff Lamb**

Defendants contend that the Court committed a "clear error of law" in denying their motion for directed verdict and submission of the issue of Sheriff Lamb's liability to the jury because "there was no testimony or evidence that Sheriff Lamb had any participation prior to [July 13, 2018] or that he knew that the cattle were being seized without a warrant or consent." (Doc. No. 243 at 3). In sum, Defendants argue the evidence presented at trial "fell short of presenting a case of supervisory liability." (*Id*. at 2). "Supervisory liability comprises two concepts important here: active involvement by the supervisor and causation." *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021).

In their response, the Hopkins point to Sheriff Lamb's trial testimony that, at least two days prior to the cattle seizure, he had personally procured emergency funding from the County Mayor to fund the costs of the raid. (*See* Doc. No. 265 at PageID # 3690-93, 3697-98). The Hopkins also point to Sheriff Lamb's trial testimony that Detective Nichols had told him (Lamb) the day before the seizure that Detective Nichols was going to take the Hopkins' cattle the next day, and that Detective Nichols told Sheriff Lamb that he (Nichols) had made a deal on behalf of the County to pay farmer Bo Jackson to hold the Hopkins' cattle after the raid. (*Id*. at PageID # 3690-92). The Hopkins note that Sheriff Lamb acknowledged that he was aware that Detective Nichols was using the money that Sheriff Lamb had procured to recruit hired help and trucks to round up and transport the cattle. (*Id*. at PageID # 3691-92, 3697-3703). The Hopkins further note that Sheriff Lamb also acknowledged having been aware that several Sheriff's office deputies were going to assist in the seizure, and that those other Sheriff's Office staff did in fact assist in the seizure. (*Id*. at PageID # 3699-3703).

Additionally, the Hopkins' note that Sheriff Lamb acknowledged that he had showed up to the Hopkins farm early in the morning on the day of the seizure, and that he had remained there for over two hours while the seizure operation unfolded. (*Id*. at PageID # 3700-01). Sheriff Lamb acknowledged that, as elected Sheriff, he was the "boss" of his staff, and that at any time he could have stopped the seizure. (*Id*. at PageID # 3702-03, 3710). Sheriff Lamb also acknowledged that when Mr. Hopkins attempted to talk to him about the seizure, Sheriff Lamb told Hopkins to deal with Detective Nichols. (*Id*. at PageID # 3701-02, 3710). The Hopkins note that Sheriff Lamb acknowledged that he had done all of the foregoing without having any idea whether there was a warrant or a Fourth Amendment warrant exception justifying the seizure of the Hopkins' cattle. (*Id*. at PageID # 3702-03).

The Hopkins argue the seizure of the Hopkins' 40+ cattle could not have happened without the men, trucks, and other resources paid for by the county's emergency funds. They further argue that those men and trucks were available to help only because Sheriff Lamb himself had procured the funds from the County Mayor to pay for them. (*See id*. at 3). The Hopkins submit that the evidence at trial shows that Sheriff Lamb procured the funds from the County Mayor for the men and trucks for the purpose of the cattle seizure, days before the seizure. Additionally, the Hopkins assert that Sheriff Lamb's claimed ignorance of whether or not Detective Nichols had a warrant is not a defense because, even under his own accounting, Sheriff Lamb intentionally enabled his office's seizure of the Hopkins' cattle without knowing whether it was or was not. (Doc. No. 265 at PageID # 3690-93).

In sum, the Hopkins assert that Sheriff Lamb's trial testimony and the overall record in this case demonstrate that there was sufficient evidence to support the jury's verdict regarding Sheriff Lamb's liability. (*See* Doc. No. 251 at 2-5). Defendants did not file a reply responding to the

Hopkins' opposition. Because evidence was presented at trial from which a reasonable juror could find that Sheriff Lamb was actively involved in the warrantless seizure of the cattle and that his conduct caused the warrantless seizure of the cattle, Defendants' motion is **DENIED** as their request to set aside the jury's verdict against Sheriff Lamb.

B.  **Jury's verdict against Marshall County**

Defendants argue the Court should set aside the jury's verdict against Marshall County because "the evidence at trial was insufficient to establish the claim for a County custom[.]" (Doc. No. 243 at PageID # 3361). In support, Defendants cite to the following portion of Sheriff Lamb's trial testimony:

> Q. And so, again, we kind of started back at the beginning with, you know, for years – you know, as you found out after the fact, for years warrants were not being taken out in these animal seizure cases; right?
>
> A. Yes, sir, I found – I found that out.

(Doc. No. 265 at 97:18-21; Doc. No. 272; Doc. No. 243 at PageID # 3362). Defendants submit that "no further inquiry was made, and no evidence was introduced as to how many other instances of warrantless seizures had occurred … [or] whether or not the other seizures had occurred with the consent of the owners." (Doc. No. 243 at PageID # 3362). Thus, Defendants argue the Court should set aside the jury's verdict on the issue of County liability because there was no proof of more than one unlawful warrantless seizure. (*See id*. at PageID # 3363).

The Hopkins respond that Defendants' foregoing argument is legally insufficient to set aside the judgment against the County because the jury found municipal liability on two theories rather than one. Accordingly, the Hopkins assert that, even if Defendants were correct that the evidence of a custom was insufficient to support the verdict, the judgment against the County would still stand because Defendants have failed to attack the County's "final policymaker" based

7

liability. (*See* Doc. No. 251 at 5 (citing verdict form, Doc. No. 236)). The Court agrees. And Defendants opted not to file a file reply in support of the present motion.

Nevertheless, the Court has reviewed Sheriff Lamb's trial testimony in connection with Defendants' pending motion, and finds that a reasonable juror could find the following testimony proof of more than one unlawful warrantless seizure of animals on suspicion of animal cruelty:

> Q. Okay. All right. Let's talk about the warrantless seizures of animals by the sheriff's office. All right. So, I mean, is it correct that, you know, basically from when you became sheriff up to the point of the Hopkins case, the sheriff's office just was not seeking warrants to seize animals on animal cruelty investigations?
>
> A. No, sir, I was not aware that warrants wasn't being sought.
>
> Q. Right, but you –
>
> A. Any elements of it, I wasn't aware of it.
>
> Q. Right. I think what you're saying is you weren't aware of it at the time. Is that what you're saying?
>
> A. I wasn't aware of it till this case come –
>
> Q. Right.
>
> A. – come to light that …
>
> Q. Right. But then after this case came to light, you looked into it; right?
>
> A. Yes.
>
> Q. Right. I mean, you talked to your staff that answer to you, and you said, what's been going on with these; right? Correct?
>
> A. Yes, sir. I was advised that they had not – not had gotten a search warrant.
>
> Q. Right. And I don't just mean in just the Hopkins' case, but like in any of these – any of the animal cruelty investigations, they just weren't getting warrants?

8

A. That was my understanding, that there wasn't a search warrant issued for them.

Q. Right. And I'm saying 'they,' but we're really talking about Nichols; right? I mean, Detective Nichols is basically who was handling the animal cruelty investigations for Marshall County during this period; right?

A. Yes.

Q. Okay. And so basically you talked to Nichols, and then you – you know, after the Hopkins' case comes about, you talk to Nichols and you find out he hasn't been getting warrants for any animal seizures for the past several years; is that right?

A. Yes.

Q. Okay. And he's basically the only one handling these kind of cases. And so what he's been doing is essentially what your office has been doing; right?

A. That's what Detective Nichols was doing, yes, sir.

Q. Right. And, I mean, nobody else –

A. Was handling. No, sir, nobody else handled –

Q. Nobody else is handling –

A. – those types of cases.

Q. Because he's the only one handling them, whatever he's doing is basically what your office is doing; right?

A. Yes, sir.
…..

Q. Right, but there's nobody in your office that was doing anything different. In other words, nobody was getting warrants for animal seizures during this time period; right?

A. No, sir. I wasn't aware – I wasn't aware of any warrants.

Q. Right. You know, again, because Nichols is the only one doing the animal seizures; right?

9

A. Yes, sir. These type, yes.

…..

Q. …. And you've previously testified that as far as you know, you know, the sheriff's office just didn't obtain warrants for any livestock seizures for the ten-year period leading up to 2018; right?

A. No, sir, I wasn't familiar with any. I didn't know of any.

Q. Didn't know of any warrants; right?

A. No, sir, I didn't know of any warrants.

Q. Thank you. But there were livestock seizures occurring; right?

A. Yes, sir, there were some.

….

Q. Okay. Now, as far as kind of the training side of things, I think you've previously testified that as sheriff you didn't take any steps, you know, prior to the Hopkins seizure to ensure that your officers were being trained to respect citizens' constitutional rights; is that right?

A. No, sir, I – I didn't provide any training.

Q. Okay. Thank you. All right.

A. I have a training officer for that.

Q. You don't know what training may or may not have been provided about –

A. No, sir, I don't.

Q. – about the Fourth Amendment?

A. No, sir, I don't.

…..

Q. And in speaking with Detective Nichols about past instances of animal seizures, you found out that in many of those, if not most of those, instances Detective Nichols had the owner's consent to take the animals; correct?

A. Correct.

(Doc. No. 265 at PageID # 3623-3631, 3721).

Accordingly, Defendants' motion is **DENIED** as to their request that the Court set aside the jury's verdict against Marshall County.

## C. Jury's award of punitive damages

Defendants argue there was insufficient evidence to support the jury's punitive damages award against Sheriff Lamb and insufficient evidence to support the scale of the jury's punitive damages award against Detective Nichols. (Doc. No. 243 at 6-7). As to the punitive damages award against Sheriff Lamb, Defendants rely on their first argument that there was insufficient evidence to support a claim against Sheriff Lamb. For the reasons already addressed, *see supra*, there was clear and convincing evidence from which a reasonable juror could find Sheriff Lamb liable. Accordingly, the Court finds that there was sufficient evidence in the record from which a reasonable juror could find that punitive damages against Sheriff Lamb were appropriate.

As to the $100,000 in punitive damages awarded against Detective Nichols, Defendants submit that the award is unconstitutionally excessive because Nichols' conduct was insufficiently reprehensible. (Doc. No. 243 at 6-7). While Defendants concede that the punitive damages award being lower than the overall award of compensatory damages does not support a finding that the award was so excessive as to offend due process, they argue that the absence of physical harm to the Hopkins, the absence of like situations having occurred, and the absence of evidence of intentional malice, trickery, or deceit on the part of Detective Nichols indicate that the award of punitive damages is excessive as to Detective Nichols. (*See id.*).

In their response, the Hopkins contend that the punitive damages award against Detective Nichols was well within the range of due process. (*See* Doc. No. 251 at 9). The Hopkins submit that the punitive damages award being less than a third of the compensatory damages award

11

strongly supports its propriety. (*Id*. citing *Kidis v. Reid*, 976 F.3d 708, 715-16 (6th Cir. 2020) (noting that four-to-one ratio of punitive to compensatory damages approaches the line of constitutional impropriety in most cases, but that 42 U.S.C. § 1983 cases involving low actual harm allow for greater rations)). The Hopkins further submit that Sheriff Lamb acknowledged at trial that the unlawful seizure of the Hopkins' cattle was not an isolated incident, but rather Detective Nichols had disregarded the warrant requirement for years. (*Id*. citing *Kidis*, 976 F.3d at 716 (repeated misconduct is a factor in reprehensibility analysis)). Additionally, the Hopkins argue the testimony from Mr. Hopkins and Sheriff Lamb at trial established that Detective Nichols tricked Mr. Hopkins by agreeing on July 9th that Mr. Hopkins could sell off his herds only to turn around on July 13th and seize them. Finally, the Hopkins note the gaps in the record regarding the seven cattle that disappeared between the July seizure and the December sale suggest that Detective Nichols stole at least some of the seized cattle for his own personal benefit. (*Id*.).

The Hopkins also argue the fact that the punitive damages award was less than half of what Mr. Hopkins estimated their legal expenses to be, which the Court instructed the jury is a factor properly considered in the determination of punitive damages, supports the reasonableness of the award. As Defendants opted against filing a reply, the Hopkins' foregoing arguments are unrebutted.

In assessing reprehensibility, courts consider whether: the harm was physical rather than purely economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the conduct involved repeated actions or was an isolated incident; and the harm resulted from intentional malice, trickery, or deceit, or mere accident. *See Kidis*, 976 F.3d at 716 (citing *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 419 (2003)). Where only one of the factors used to determine defendants' reprehensibility is present, a

ratio of punitive to compensatory damages in the range of 1:1 to 2:1 is all that due process will allow. *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 488 (6th Cir. 2007). Here, there is evidence that two of the factors used to determine reprehensibility are present: the unlawful warrantless seizures of animals happened repeatedly over many years and that the warrantless seizure of the cattle resulted, in part, from Detective Nichols' trickery. Accordingly, Detective Nichols' conduct was sufficiently reprehensible and the $100,000 in punitive damages awarded against him is within constitutionally acceptable range so as not to offend due process. *See id*.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE